UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VICTORIA JONES,                          )                                      .
                                         )
                    Plaintiff,           )        Case No. 08 C 3548
                                         )
        vs.                              )        Magistrate Judge Susan E. Cox
                                         )
BREMEN HIGH SCHOOL DISTRICT 228,         )
                                         )
                    Defendant.           )

## Memorandum Opinion and Order

Plaintiff Victoria Jones ("plaintiff") sued defendant Bremen High School District 228 ("defendant") for employment discrimination based on race. Plaintiff has filed a motion for sanctions due to spoliation of evidence, alleging that defendant has failed to ensure that relevant documents were preserved during litigation and that this failure has severely prejudiced plaintiff's case. Plaintiff asks for an adverse inference instruction to the jury that the destroyed documents would have supported her claims by containing discriminatory statements. She also asks for this Court to preclude defendant from arguing that the absence of discriminatory comments in extant documents shows that no discriminatory comments were made and/or that plaintiff was not subject to discrimination or a hostile work environment. This Court grants this motion in part and denies it in part [dkt 51].

I.      **Factual Background**

        A.   **Plaintiff's Allegations and Employment History**

        Unless otherwise stated, the following facts are from plaintiff's Second Amended Complaint [dkt 58]. Plaintiff is a black woman who worked for defendant from 1984 until 2009. She alleges that from April 2006 onwards she and other black secretaries were given more

1

responsibilities than similarly situated white secretaries, that she was subject to insults and criticisms not given to similarly situated white secretaries, and that defendant was aware of this discriminatory behavior. She further alleges that defendant's discharge of her was a retaliation against plaintiff's charges of discrimination.

Plaintiff claims that she received positive evaluations and few complaints prior to the 2005-2006 school year.[1] This began to change in early 2006, when Michelle Jurgens ("Jurgens"), a Dean, began complaining to PPS Director Phyllis Kimmel ("Kimmel") about plaintiff's conduct at work.[2] Plaintiff on her part complained to Principal Marcia Mendenhall ("Mendenhall") about Jurgens's conduct.[3] During the spring of 2006 plaintiff told Mendenhall she had been assigned more work than she could reasonably complete in the time given. Plaintiff was called into meetings regarding her conduct and complaints on March 29, 2006 and December 4, 2006.

Jurgens's complaints continued into 2007. On March 21 Jurgens called plaintiff into a meeting to discuss an incident in which Jurgens claimed plaintiff raised her voice to a student.[4] Defendant claims plaintiff told Jurgens that she was not able to tell her what to do.[5] Jurgens arranged a meeting between her, plaintiff, Mendenhall, and plaintiff's union representative for March 28.[6] On March 23 defendant claims that plaintiff refused to follow Jurgens's request to write a pass for a student and failed to acknowledge Jurgens as she was speaking.[7] The March 28 meeting happened as planned but did not resolve the conflict between Jurgens and plaintiff;

---

[1] Exhibit 12, Plaintiff's Reply Brief In Support of Her Motion for Sanctions [dkt 61-1].
[2] Exhibit B, Defendant's Response In Opposition to Plaintiff's Motion for Sanctions [dkt 59-2].
[3] Dkt 61-1.
[4] Dkt 59-2.
[5] *Id.*
[6] *Id.*
[7] *Id.*

Kimmel has testified that during the last two to three months of the school year Jurgens would complain to her about plaintiff at least once a week.[8] Kimmel also witnessed Jurgens slam a handful of papers on plaintiff's desk. Kimmel told Mendenhall about this incident but to her knowledge Mendenhall did not respond.[9] Kimmel also witnessed Associate Principal Paul Rybarczyk ("Rybarczyk") acting rudely towards plaintiff and a fellow secretary, Karen Edwards ("Edwards") on May 16, 2007.[10] Ms. Kimmel left her job later that month, but her email folders were completely empty (with the exception of her resignation) according to the district's technological director.[11]

At the beginning of the 2007-2008 school year defendant hired Edwin Lipowski ("Lipowski") as Kimmel's replacement for PPS director.[12] Around this time plaintiff began seeing a physician for stress-related medical problems.[13] The change in leadership did not improve the relationship between plaintiff and Jurgens. Jurgens began to compile a list of plaintiff's actions, which she considered insubordinate, such as not acknowledging her when talking, not informing her of student visits, and not acknowledging receiving her emails.[14] On September 21 defendant alleged that plaintiff ignored Jurgens's request to find a suspension form and instead talked with a co-worker; that day plaintiff was called into another meeting.[15] On September 27 plaintiff asked Principal Dave Kibelkis via email to mediate between her and Jurgens.[16]

---

[8]Dkt 59-2; Dkt 51-1.
[9]Plaintiff's Initial Complaint, Dkt 1.
[10]*Id.*
[11]Deposition of Curtiss Strieltelmeier, October 27, 2009, Dkt 51-4, p. 9.
[12]Dkt 59-2.
[13]Dkt 1.
[14]Dkt 59-2.
[15]Dkt 59-2; Dkt 51.
[16]Dkt 59-2.

Lipowski's relationship with plaintiff also deteriorated. For example, on October 1 Lipowski emailed plaintiff asking her to complete a list of students on probation and told her he needed it done immediately; she informed him she would have it done by the next day (Lipowski's language indicates that he was impatient for the list).[17] Plaintiff and Lipowski also had a disagreement regarding a rewrite of a list of bus stops, and on October 12 Edwards witnessed Lipowski become confrontational with plaintiff when asking her for the bus report.[18] That day plaintiff and Lipowski had another meeting to try to resolve their problems.[19]

Complaining of stress, plaintiff took a leave of absence from work starting on October 15, 2007 which lasted about seven months. Plaintiff filed a complaint with the EEOC alleging racial and disability discrimination on October 5, 2007 and a complaint alleging discrimination based on race and disability with the IDHR on November 29, 2007. Defendant filed its response to plaintiff's EEOC charges on December 19, 2007 and its response to plaintiff's IDHR charges sometime before March 2008.[20] Plaintiff received a Final Agency Decision from the EEOC on April 10 and a Right to Sue letter on April 13. Plaintiff filed her original complaint with this Court on June 20, 2008. Upon retaining counsel, plaintiff filed her amended complaint on October 16, 2008; this complaint added a 42 U.S.C. § 1983 claim alleging that this discrimination followed defendant's custom or policy and added an age discrimination claim based on 29 U.S.C. § 621 *et seq* [dkt 11]. The district court has since dismissed Plaintiff's age, sex, and national origin claims, but has allowed her racial discrimination claims to proceed [dkt 25].

---

[17]Dkt 59-2.
[18]Dkt 59-2; Dkt 1.
[19]Dkt 59-2.
[20]Dkt 59-2.

Defendant and plaintiff's relationship did not significantly improve after plaintiff returned to work in the spring of 2008; indeed, it worsened during the fall of 2008. Plaintiff was called into further meetings regarding her behavior on September 5, September 16, and September 18, as well as two meetings on September 12.[21] During the rest of the school year, plaintiff was called into meetings about her performance on a nearly monthly basis (November 12, 2008, December 1, 2008, January 29, 2009, February 26, 2009, March 5, 2009, April 3, 2009, and April 28, 2009.)[22]

Defendant fired plaintiff on November 17, 2009, allegedly for turning over confidential student records to her attorneys, the subject of a motion for a protective order before this Court. Plaintiff next filed a retaliation claim against defendant with the EEOC on November 30, 2009. She filed her Second Amended Complaint on January 5, 2010, adding a claim of retaliatory discharge to her racial discrimination claims in violation of Title VII.[23]

**B.      Defendant's Preservation of Documents Relevant to Plaintiff's Claims**

It is undisputed here that defendant did not place a litigation hold on electronically created documents in this case when it first learned in October 2007 that plaintiff had filed an EEOC charge against it alleging race and disability.  Instead, only Principal Kibelkis, Dean Jurgens and PPS Director Lipowski, the individuals most involved in the alleged discriminatory actions,  were tasked by the district to search through their own electronic mail (and no one else's) and cull out relevant documents.[24]      There is no evidence that suggests that their assessment of what was relevant and what was not was guided by outside counsel.  These three

---

[21]Dkt 51.
[22]*Id.*
[23]42 U.S.C. § 2000e *et seq.*
[24]Dkt 51.

employees (and only these three) were asked to preserve whatever email and documents they believed were relevant to the case. In addition, if any employee in the district wanted to permanently delete an email, he or she could do so by "double-deleting" that email from his or her computer. After thirty days, that email would automatically be erased from the back-up system.

After plaintiff filed her Complaint in June 2008 in federal court, defendant requested that additional employees search for relevant electronic and other documents, including Principal Mendenhall and Associate Principal Rybarczyk. As with Lipowski, Jurgens, and Kibelkis, the employees were free to make their own determination as to which documents were relevant.[25] It was not until the spring of 2009 that defendant instructed all of its employees to preserve emails which might be relevant to the litigation.[26] However, in October 2008, defendant began automatically saving all emails from the district's users in a searchable archive.[27] (As noted above, before this change was made, defendant's backup tapes were rewritten every thirty days.[28]) Accordingly, although there was no litigation hold in place for all employees until spring of 2009, all potentially relevant documents created after October 2008 were automatically preserved in a backup archive.

In summary, prior to June 2008, only three employees were asked to search and preserve electronic mail and they did so without any supervision by counsel. Three additional employees were added to this list in June 2008, after the Complaint was filed. Any email that existed prior to October 2008, which these employees did not preserve because they did not deem it relevant,

---

[25]Dkt 51.
[26]Dkt 51-4, p. 5.
[27]Dkt 51-5.
[28]*Id.*

6

cannot be recovered now. Other email, which was deleted in the normal course of business by other employees who were not asked to preserve email before October 2008, cannot be recovered now. By contrast, all email created after October 2008 has been backed up and can be searched for relevant materials.

### C.  Defendant's Belated Production of Documents to Plaintiff

Plaintiff filed her First Set of Requests for Production of Documents and Things on May 13, 2009.[29] Sometime between May 13, 2009 and September 4, 2009, defendant partially answered these requests.[30] Plaintiff claimed that there were obvious deficiencies in the production of documents to her, particularly the dearth of emails from 2006 and 2007. On October 20, 2009, this Court ordered defendant to produce its document retention policy.[31] Defendant responded by requesting its technological director. Mr. Strietelmeier, to put in writing the district's email retention policy ("ERP").[32] In his deposition about the ERP on October 27, 2009, Strietelmeier testified that he changed the archiving system in October 2008 to allow for the automatic backup of email "not necessarily because of any particular case."[33] He also testified that he searched the current inboxes of Mendenhall, Jurgens, Rybarczyk, Kibelkis, Kimmel, and several other supervisory employees, plus the email boxes of the other secretaries to comply with the production requests.[34] He described his search protocol as searching for various forms of plaintiff's name within the email boxes, and he made his own determinations as

---

[29]Dkt 44-2.
[30]Dkt 44-3.
[31]Dkt 36.
[32]Dkt 44-7 p. 4.
[33]*Id.* at p. 5
[34]Dkt 51-4 p. 6.

to what material was relevant.[35] Strietelmeier was not sure if he looked on the archive server for emails from the supervisors, and he was not sure of all of the people whose email boxes he searched.[36]

However, during the briefing on defendant's motion to bar the use of confidential records, which plaintiff allegedly had misappropriated, plaintiff produced an alternative document retention policy which she had discovered on defendant's website called "Access to District's Public Records" policy ("DRP").  The DRP states that it is defendant's policy to maintain and preserve all evidence of defendant's "organization, function, policies, procedures, or activities."[37] The DRP was adopted in 2003 and was last amended in 2006.[38]

On December 7, 2009, plaintiff filed the Motion for Sanctions at issue.[39] As of December 6, 2009, defendant had not provided plaintiff with any emails regarding meetings on March 29, 2006, December 4, 2006, May 21, 2008, September 12, 2008, September 16, 2008, November 12, 2008, or April 3, 2009.[40] Defendant also had not supplied any documents from October through December 2006, February 2007, April 2007 (despite Kimmel's testimony that Jurgens had regularly sent her complaints about plaintiff during this time), July 2007, August 2007, February 2008, March 2008, April 2008, and June 2008.[41] The only documents from January 2007 that defendant had produced by December 6, 2009 were those included in defendant's response to plaintiff's initial EEOC charges.[42] Even though many of those documents were

---

[35]*Id.* at p. 7.
[36]*Id.* at p. 8.
[37]Dkt 44-9.
[38]*Id.*
[39]Dkt 51.
[40]*Id.* at 11.
[41]*Id.* at 7.
[42]Plaintiff claimed that Defendant had supplied no documents from January 2007, but Defendant's EEOC defenses show emails from January 2007.

relevant to various non-EEOC interrogatories, defendant's answer did not cross-reference these documents when answering the other interrogatories. The same day, defendant sent plaintiff 2,354 additional pages of emails.[43]  Defendant filed its response to the motion for sanctions on January 13, 2010, and plaintiff filed her reply to the response on January 27, 2010. Defendant's response included affidavits from Kibelkis and Lipowski stating that archives of their email for the 2007-2008 and 2008-2009 school years had been re-created and they did not permanently delete any emails regarding plaintiff during either of these periods.  Jurgens filed an affidavit in which she stated that she saved all emails between herself and Kimmel which were on her computer in November 2007.  She also stated that she printed out all emails in her possession regarding plaintiff during the 2007-2008 school year.[44]

On May 4, 2010, after briefing on the motions for sanctions was completed, we asked plaintiff for more information concerning the late production of approximately 2300 emails. Specifically, we asked plaintiff whether the new production filled in any of the missing gaps she had identified in her motion for sanctions from the 2007-2008 production.  In response, plaintiff told us that defendant produced another 3600 emails on the same day as our order.[45] According to plaintiff, most of this latest production is email created before October 2008, the time period during which email would not have been automatically saved if deleted by recipient/sender. Although many of these emails are irrelevant, plaintiff has identified at least 110 emails that are directly relevant to plaintiff's allegations and, therefore, should have been produced long ago.

---

[43]Dkt 59-9.
[44]Dkt 59-4, Dkt 59-5, Dkt 59-6.
[45]Dkt. 68.

In sum, although all emails responsive to plaintiff's discovery requests were produced only after her motion for sanctions was filed, it appears now that most (if not all) of the gaps in defendant's production have been filled. That being said, because there was no hold put in place on electronic documents and because emails could be manually and permanently deleted if an employee chose to do this, we cannot determine with certainty that all email relevant to plaintiff's claims were preserved.

## II. Legal Standards

Both the Court's inherent powers as well as the Federal Rules of Civil Procedure give the Court the authority to sanction a party for failure to preserve documents.[46] A motion for discovery sanctions can be made when a party either destroys or fails to preserve evidence which it controls and which it could reasonably foresee to be material to a potential lawsuit.[47] The purpose of sanctions is to prevent abuses of the judicial system and to promote the efficient administration of justice.[48] The Court's power to sanction includes sanctioning parties that fail to preserve potential evidence that would have been discoverable.[49] Sanctions "must be proportionate to the circumstances surrounding the failure to comply with discovery."[50]

To find that sanctions for spoliation are appropriate, the Court must find the following: 1) that there was a duty to preserve the specific documents and/or evidence, 2) that the duty was breached, 3) that the other party was harmed by the breach, and 4) that the breach was caused

---

[46]*Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991); *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993).

[47]*Porche v. Oden*, No. 02 C 7707, 2009 WL 500622, at *3 (N.D.Ill. Feb. 27, 2009) , citing Fed. R. Civ. P. 37(c)(1).

[48]11 F.3d at 1367.

[49]*Wigninton v. Ellis*, No. 02 C 6832, 2003 WL 22439865, at *3 n. 5 (N.D. Ill. Oct. 27, 2003).

[50]*Langley v. Union Electric Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (internal citations omitted).

by the breaching party's wilfulness, bad faith, or fault.[51] If the Court finds that sanctions are appropriate, it must determine whether the proposed sanction can ameliorate the prejudice that arose from the breach; if a lesser sanction can accomplish the same goal, the Court must award the lesser sanction.[52]

First, a party has a duty to preserve evidence that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action.[53] A document is potentially relevant, and thus must be preserved for discovery, if there is a possibility that the information therein is relevant to any of the claims.[54] The existence of a duty to preserve evidence does not depend on a court order.[55] Instead, it arises when a reasonable party would anticipate litigation.[56]

Second, the duty to preserve evidence must have been breached.[57] In the Northern District of Illinois, a party's failure to issue a litigation hold is not per se evidence that the party breached its duty to preserve evidence.[58] Instead, reasonableness is the key to determining whether or not a party breached its duty to preserve evidence.[59] It may be reasonable for a party to not stop or alter automatic electronic document management routines when the party is first

---

[51] *Porche*, 2009 WL 500622 at *5.
[52] *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *9 (N.D. Ill. Aug. 18, 2005).
[53] *Bryant v. Gardner*, 07 C 5909, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. Nov. 21, 2008).
[54] *Ares-Serano, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219 (D. Mass 1993).
[55] *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).
[56] *Id.*
[57] *Porche*, 2009 WL 500622 at *
[58] *Haynes v. Dart*, 08 C 4834, 2010 WL 140387 at *4 (N.D. Ill. Jan 11, 2010).
[59] *Haynes v. Dart*, 08 C 4834, 2010 WL 140387, at *4 (N.D. Ill. 2010), *citing Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).

notified of the possibility of a suit.[60] However, parties must take positive action to preserve material evidence.[61]

Third, the breach must have harmed the other party and, fourth, there must be a sufficient level of fault to warrant sanctions.[62] Findings of wilfulness, bad faith, and fault are all sufficient grounds for sanctions.[63] However, a court may only grant an adverse inference sanction upon a showing of bad faith.[64] Bad faith requires the intent to hide unfavorable information.[65] This intent may be inferred if a document's destruction violates regulations (with the exception of EEOC record regulations).[66] Fault is defined not by the party's intent, but by the reasonableness of the party's conduct.[67] It may include gross negligence of the duty to preserve material evidence.[68] Mere negligence is not enough for a factfinder to draw a negative inference based on document destruction.[69]

## III. Analysis

### A. Duty to Preserve

The first issue we must resolve is when defendant's duty to preserve evidence is triggered. A defendant has a duty to preserve evidence that it has control over and which it

---

[60]*Cache La Poudre, Inc. v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 624 (D. Colo. 2008).

[61]*Danis v. USN Communications, Inc.*, 2000 WL 1694325, at *36, *38 (N.D. Ill. 2000).

[62]*Porche*, 2009 WL 500622 at *5.

[63]*Porche v. Oden*, No. 02 C 7707, 2009 WL 500622, at *5. *But see Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) ("a showing [of bad faith] is a prerequisite to imposing sanctions for the destruction of evidence," thereby refusing to issue sanctions because the level of fault had not risen to the level of bad faith.

[64]*Fass v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). *But see OCE North America, Inc. v. Brazeau*, 09 C 2381, 2010 U.S. Dist. LEXIS 25523, at *17 (N.D. Ill. March 18, 2010) ("[a]n adverse inference may be appropriate if . . . the breach involved willfulness, bad faith or fault[.]")

[65]*Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998).

[66]*Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002).

[67]*Id.*

[68]*Marrocco v. Gen. Motors*, 966 F.2d 220, 224 (7th Cir. 1992).

[69]*Rodgers v. Lowe's Home Ctrs, Inc.*, 05 C 0502, 2007 WL 257714 at *5 (N.D. Ill. Jan. 30, 2007).

reasonably knows or can foresee would be material (and thus relevant) to a potential legal action.[70] Documents are potentially relevant if there exists a possibility that the information in the documents would be relevant to any of the claims.[71] This duty arises when a reasonable party would anticipate litigation and does not depend on a court order.[72] Defendant clearly had a duty to preserve documents relevant to plaintiff's claims when it received notice of plaintiff's EEOC charges on or before November 30, 2007; accordingly, defendant had a duty to preserve documents relevant to plaintiff's discrimination claims at least by this date.

### B. Breach of Duty to Preserve

The second question we must answer is whether defendant has breached its duty to preserve evidence. A party fulfills its duty to preserve evidence if it acts reasonably.[73] "More than good intentions [are] required; those intentions [must] be followed up with concrete actions reasonably calculated to ensure that relevant materials will be preserved," such as giving out specific criteria on what should or should not be saved for litigation.[74]

Plaintiff contends that defendant failed to preserve documents which were materially relevant to this case. She points to the fact that while a former employee of defendant, Phyllis Kimmel ("Kimmel"), has stated that she received weekly emails from Jurgens about plaintiff's work for two to three months, as of December 6, 2009 defendant only produced six emails fitting that description.[75] She also points to the fact that while defendant called plaintiff into at

---

[70]*Bryant v. Gardner*, 07 C 5909, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. 2008).
[71]*Ares-Serano*, 151 F.R.D. at 219.
[72]*Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).
[73]*Haynes v. Dart*, 08 C 4834, 2010 WL 140387, at *4 (N.D. Ill. 2010), *citing Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992).
[74]*Danis v. USN Communications, Inc.*, 2000 WL 1694325, at *36, *38 (N.D. Ill. 2000).
[75]Dkt 51-1.

least 18 meetings between March 2006 through April 2009, there were (as of December 6, 2009) no emails relating to eight of the meetings. The Court believes, based on plaintiff's latest filing, that most of these gaps in plaintiff's production have been eliminated. Defendant argues that its document preservation procedures were entirely appropriate.

The Court finds that defendant clearly breached its duty to preserve relevant documents in this litigation. Defendant was aware at least by November 2007 that plaintiff was challenging its treatment of her on the basis of her race and alleged disability. Defendant also was aware that its employees were able to delete permanently emails. Despite these indisputable facts, defendant inexplicably did not request *all* employees who had dealings with plaintiff to preserve emails so that they could be searched further for possible relevance to plaintiff's case by counsel. Instead, defendant directed just three employees (one of whom was at the center of plaintiff's complaints) to search their own email without help from counsel and to cull from that email what would be relevant documents. It is unreasonable to allow a party's interested employees to make the decision about the relevance of such documents, especially when those same employees have the ability to permanently delete unfavorable email from a party's system. As one court has noted, "simply accept[ing] whatever documents or information might be produced by [its] employees," without preventing defendants from clearing the hard drives of former employees, was improper.[76] Most non-lawyer employees, whether marketing consultants or high school deans, do not have enough knowledge of the applicable law to

---

[76]*Cache La Poudre Feeds, L.L.C. v. Lan O'Lakes, Inc.,* 244 F.R.D. 614, 630 (D. Colo. 2007)

correctly recognize which documents are relevant to a lawsuit and which are not. Furthermore, employees are often reluctant to reveal their mistakes or misdeeds.

Defendant arrgues that merely failing to place a litigation hold on its employees' email is excusable, citing *Haynes v. Dart.*[77] The court's decision in *Haynes*, however, centered on defendant's failure to preserve a sheriff's deputy's handwritten notes taken during meetings. We acknowledge that the *Haynes* court found that, in certain cases, a defendant's failure to issue a litigation hold at the start of a case would not, standing alone, be a breach of the duty to preserve documents.[78] However, the court in *Haynes* emphasized that defendant, the Cook County Sheriff's Office, was a party in approximately 800 pending lawsuits. Imposing a broad litigation hold in each case could cause an undue burden to the Sheriff's office.[79] The Court also emphasized that there was no evidence that the official secretarial notes for those meetings were even missing.[80] To the contrary, in this case there is no evidence that a simple litigation hold to preserve existing electronic mail would have placed any burden on defendant. In addition, the Court is troubled that the policy followed in this case is not the same document retention policy that defendant publically espouses on its web site and which was discovered by plaintiff in this law suit.

Further, although defendant may not have had a duty before the lawsuit was filed to cease the overwriting of the backup tapes, it certainly had a duty to preserve extant email folders when it was first notified of the EEOC filing. Such preservation efforts would have

---

[77] 2010 WL 140387 at *4.
[78] *Id.*
[79] *Id.*
[80] *Id.*

required very little effort; defendant's technology department could have easily halted the auto-deletion process and asked all employees who supervised plaintiff (not just Kibelkis, Jurgens, and Lipowski) to preserve information. In fact, defendant did just that with apparently minimal effort beginning in October 2008.

### C. Harm to Plaintiff

The third factor to determine whether sanctions are appropriate for spoliation is whether or not the plaintiff has been harmed by the defendant's breach. Jurgens has admitted that she deleted emails after December 2008 and, because some of those emails were created before the new archival system was put in place, those emails are now lost.[81] She testified that these emails did not seem pertinent to the lawsuit in her view. As a non-lawyer and as an interested party, Jurgens is not qualified to judge whether documents are relevant to the suit. Furthermore, neither Mendenhall nor Rybarczyk, nor any other employee besides Jurgens, Lipowski, and Kibelis, was informed of the need to preserve emails before November 2008. Even if this Court assumes no bad faith on the part of defendant or defendant employees, there remains the distinct possibility that emails relevant to plaintiff's case were destroyed by its employees. Further, although many more emails from the 2007-2008 school year have been produced since the instant motion was filed, the tardiness of that production (which was not until May 14, 2010), also has harmed plaintiff.

---

[81]Dkt. 44-6 and 44-10, p.4.

**D.     Level of Fault**

The final factor to determine the appropriateness of sanctions and the appropriate level of sanctions is whether the defendant acted wilfully, acted in bad faith, or is merely at fault. To find bad faith, a court must determine that the party intended to withhold unfavorable information.[82] Bad faith may be inferred when a party disposes of documents in violation of its own policies.[83] Gross negligence of the duty to preserve material evidence is generally held to be fault.[84]

Plaintiff charges that defendant disposed of documents in violation of its own policies and thus demonstrated bad faith. In response to this charge, defendant claims that emails that contained individual complaints about plaintiff do not evince defendant's "organization, function, policies, procedures, and activities."

There is no evidence that defendant wilfully chose its document retention system as a way to minimize exposure of potentially relevant documents for future lawsuits; indeed, defendant began to preserve more data, not less, during these proceedings. However, defendant was grossly negligent in its attempts to secure relevant documents. Defendant relied upon its employees–the same employees whose conduct was at question in the lawsuit–to select the documents they felt were relevant. These employees had no legal training. Furthermore, if the employees had racially harassed plaintiff, they would have had both professional and personal motives for concealing evidence of that harassment. It is inconceivable that defendant was

---

[82]*Mathis,* 136 F.3d at 1155.
[83]*Park*, 297 F.3d at 615.
[84]*Marrocco v. Gen. Motors*, 966 F.2d 220, 224 (7th Cir. 1992).

unaware of these motives; the fact that defendant still allowed the employees to make their own determinations on relevancy is proof of defendant's recklessness.

Furthermore, defendant's failure to obtain documents from more than three employees at the first sign of litigation constitutes gross negligence. Plaintiff's EEOC complaint did not name specific persons; indeed, defendant admits in its Position Statement to the EEOC that "absent from this complaint is the identity of the person or persons who have harassed Jones."[85] However, upon receiving the complaint in November 2007, defendant asked only Kibelkis, Jurgens, and Lipowski to save relevant records. Mendenhall was not asked to preserve records until November 2008, even though a) Mendenhall was present at a meeting between plaintiff and Jurgens before September 27, 2007,[86] b) plaintiff sent Mendenhall a complaint about Jurgens in 2006,[87] and c) defendant mentioned Mendenhall in its Position Statement to the EEOC.[88] Because defendant was clearly aware that Mendenhall was one of plaintiff's supervisors and had received plaintiff's complaints, defendant's year-long failure to ask Mendenhall to preserve relevant documents goes beyond ordinary mistake into gross negligence. Thus, it is appropriate to find defendant at fault.

Plaintiff also contends, however, that this Court should sanction defendant for spoilation of evidence because it concealed its document retention policy from plaintiff during discovery. Defendant produced a document (the EDP) about its email retention procedures, which indicates that staff were free to permanently delete emails until October 2008.[89] In response,

---

[85] Dkt 59-2.
[86] Plaintiff's Original Complaint, dkt 1.
[87] *Id.*
[88] Dkt 59-2.
[89] Dkt 44-6.

plaintiff produced what she contends is defendant's true document retention policy (the DRP) from defendant's website, which requires that documents, including emails, which are "evidence of the District's organization, function, policies, procedures, or activities" be cataloged and saved.[90] She asserts that defendant sought to purposefully hide the DRP because defendant's actions in deleting emails about plaintiff's work performance violated the DRP. The Court is unconvinced by this argument. An individual employee's dissatisfaction with a coworker does not constitute evidence of defendant's procedures or activities. However, this Court does not understand why defendant did not produce this broader document retention policy when the Court ordered it to reveal its record retention policies. Because the DRP is available on defendant's website, it would be readily accessible to administrators and staff. Because the DRP deals with Freedom of Information Act and other public records requests, it is the sort of document that defendant should have readily on hand. It is inexplicable that defendant could not produce the DRP. This failure is another example of the defendant's negligence in handling preservation and production of electronic documents in this litigation.

## V.      Appropriate Sanction

Plaintiff has demonstrated that defendant's attempts to preserve evidence were reckless and grossly negligent. She has demonstrated that defendant did not reasonably prevent employees from destroying documents concerning this case. She has established that defendant failed to adequately supervise those employees who were asked to preserve documents. She also has demonstrated that some relevant emails were probably lost due to this negligence.

---

[90]Dkt 44-9.

Finally, she has shown that the tardy production of many more emails after depositions have been taken has caused her prejudice. Plaintiff has not, however, demonstrated that defendant purposefully tried to destroy evidence material to her racial discrimination claim. This is not a case where, for example, there were deliberate attempts to "wipe" hard drives or to destroy relevant evidence by other technological or manual means.[91] Indeed, by October 2008, document preservation efforts were put in place to ensure that all email would be backed up.

The Court has broad discretion to fashion an appropriate sanction to remedy plaintiff's prejudice. That sanction should be appropriate to the harm that has been done to plaintiff.[92] Because the Court does not find that there was a deliberate effort to conceal harmful evidence, the Court will not find (as plaintiff urges) that an adverse inference be drawn against defendant (that email it did not preserve contained discriminatory statements). Such an inference, under these facts, would be contrary to established precedent and unfair to defendant.[93]

However, the Court will grant plaintiff the following sanctions: 1) the jury in this case should be told that the defendant had a duty to preserve all email concerning plaintiffs' allegations beginning in November 2007, but did not do so until October 2008. Accordingly, defendant will be precluded from arguing that the absence of discriminatory statements from this period (November 2007 until October 2008) is evidence that no such statements were made; 2) defendant will be assessed the costs and fees of plaintiff's preparation of the motion for sanctions; and 3) plaintiff will be permitted to depose witnesses concerning emails produced on May 14, 2010 if it so chooses. Defendant will pay for the cost of the court reporter for those

---

[91]*See, e.g., Plunk v. Village of Elwood, Ill.,* No. 07-88, 2009 WL 1444436 (N.D. Ill. May 20, 2009).
[92]*See* discussion, *supra*, pp. 10-11.
[93]*Fass*, 532 F.3d at 644.

depositions. Plaintiff to submit a final fee petition after these depositions are completed.

**IT IS SO ORDERED.**

**ENTERED:** May 25, 2010 _____

_____
UNITED STATES MAGISTRATE JUDGE
Susan E. Cox